Okay, thank you. Good afternoon, everyone. I'm Justice Aurelia Pichinsky. We're in the 1st District and the 1st Division of the Illinois Appellate Court. On your screen, you'll see my colleagues, Justice Michael Hyman and Justice Mary Ellen Coghlan. And we are here to hear case 120-1375, People of the State of Illinois v. Christopher Caldwell. With that, I'll ask the attorneys to introduce themselves. The defendant's attorney first, please. Uh, Ross Allen for Christopher Caldwell. Okay, and the state? Dan Pivovarczyk on behalf of the people. Okay, um, Mr. Allen, you'll have give or take 10-15 minutes. You should reserve some time for rebuttal. And generally, we try to give you a chance to say what you're going to say without too many interruptions. We will interrupt and try not to do that too often. But remember, we've read the record, we've read the briefs, and we're familiar with the facts in this case. So my advice is always to start with your absolute best argument. With that, please proceed. May it please the court, Ross Allen from the from the Office of the State Appellate Defender, representing Christopher Caldwell. I would like to discuss my first argument that Mr. Caldwell made a substantial showing that his trial and appellate attorneys provided ineffective assistance where appellate counsel failed to challenge trial counsel's refusal to seek a reckless conduct jury instruction. The evidence at trial more closely reflects reckless conduct. There were only two statements as to what- Let's let's look at what your opening brief says. First sentence, opening brief. At around 11 p.m. on July 10, 2006, Christopher Caldwell ran from police when they pulled up to the bus stop where he was waiting and so forth. Okay. Now at trial, what did he say? He testified at trial. And when I say what did he say, what was the basis of his defense? He had a multi, he had multiple different strategies. What he testified to at trial was that it was a misidentification. However, the however, at trial, counsel still went with a strategy that the person who was being chased by police did not intentionally fire at Officer Sweeney. Instead, he fired his weapon in order to discourage Officer Sweeney from continuing to pursue him through the gate and the gangway. Well, but the testimony was that he was not there. He was asleep. Now you can't be both asleep. And wouldn't a trial lawyer have been ineffective to have said, well, he wasn't there? But if he was there, I mean, what kind of, what would happen to a jury if he had done that? Did he do a terrific job in winning, getting him off the claim of attempted murder? Sorry. I do think it was a he, if you look at his comments from the hearing, he clearly did not understand the transferred intent. And if he had, he would have, and he should have, and he should have proffered a reckless conduct instruction for a- It doesn't matter that he doesn't understand it or not, because again, the trial theory was he was not there, that that was not his handwriting on those statements, that he, that was not him, that the person shooting, that was not him, right? I mean, you can't have, you either are there or you're not. And saying that in the alternative would have, would have been to say, yeah, I was there. I mean, a jury, there aren't many juries that wouldn't figure that one out. Well, it is still the state's duty to prove him beyond a reasonable doubt at trial. And I do think he did have a two-pronged theory at trial. And, you know, as evidenced by the verdict, it, it, it worked. I mean, evidence of the jury's verdict, they did not believe Officer Sweeney's statement. They recalled all statements to police that he did not intend to kill Officer Sweeney when he fired- Well, I, I think what you're arguing is that it would have been a better strategy for the lawyer to basically tell the jury, my client wasn't there, but if you think he's lying and he was there, then he didn't have the intent. I mean, how can that be a good strategy? I mean, I guess it's the same question Justice Hyman just asked, but to me, you lose all credibility. And at a minimum, isn't that a decision well within the, the purview of a defense attorney to make concerning strategy? It is if counsel understands the law. And see, I think the big focus here is that he did not understand the law because he still was arguing for the, that it was, that, that there was no intent to kill based upon the actions of the person running through the gate, running through the gangway. And so if he had understood the law, he, he would have presented this reckless conduct in instruction as well, because that would have essentially put a class eight misdemeanor offense before the jury instead of two. You think under the facts of this case, a reasonable jury is going to come back with a finding on a misdemeanor? Yes, because he was, he acted recklessly when he ran, when he fired running away. He wasn't there. He testified he wasn't there. And that was not his signature. You can't, you know, you're trying to put it in after the fact, you're looking backwards and you say he should have done this because we won on the major issue. And you say, well, he should have done something else on the issue that he was found, he was convicted of. The jury found that it was him. And in fact, your brief starts out, that's why I read the first sentence. If there's nothing in your brief that would lead one to believe that he testified that he wasn't even there. I mean, your first sentence says he was there and everything in your brief, when you tell the tale, he's there. So I don't understand how you can, you're making one hand, you're saying one thing and another hand, you're saying another thing. And as Justice Conlin said, this is all strategy. I mean, how do you get around it? Well, it wasn't strategy to not ask for that instruction because counsel did not understand the law of transferred intent. I don't see how one has to do with the other. Tell me how that had to do, that was the reason. I mean, on what basis can you say that that was the reason he was, I mean, so he basically said it was trial strategy, but then in a couple of pages during the Krenkel hearing, he essentially showed that he did not understand transferred intent. And so I think based upon that, I think he would have if he had understood that because Mr. Caldwell had said that he had been asking counsel to do that. And if you look at people being upped in where this court found sufficient evidence of reckless conduct, where a defendant fired at a tow truck, he fired at a truck and while it basically added at its tires and also above it while it drove. But you know that the facts of that case are completely distinguishable from the facts of this case. You know that because you are a very competent attorney. So I think it's incredibly similar because he fired at a car as it drove away. I think it's a very similar case where he was acting recklessly because they did get the testimony of Officer Sweeney. The jury credited essentially based upon their verdicts, the testimony of Mr. Caldwell, not the testimony. It was a close case, right? The jury was not sure what to do here. So we don't know what they credited or what they did, but we know they didn't believe his story when they testified to him. And I don't see, if I'm not mistaken, the case you just discussed, there the defendant did not say he didn't do the shooting, did he? No. I think that's what Justice Cogman is saying. That's completely different. I think that is a material fact to distinguish the cases. I would also, you know, if there are no further questions on argument one, I would also like to discuss the third argument that Mr. Caldwell received unreasonable assistance where his counsel failed to shape his contentions into the proper legal form. He failed to properly supplement the petition and failed to attach evidentiary support for Caldwell's contentions. If he could not do that, he should have withdrawn the claims. Okay. We've read the brief and we understand that actually his third argument is his post-conviction counsel failed to properly amend and supplement his post-conviction petition. And that's because he filed an original petition, then an amended petition. Post-conviction petition seemed to sort of not understand that they needed to combine both of them. But there were three points that you raised about the post-conviction petition. I'm mostly interested in Sweeney's vest. Can you talk about that? Well, I think that based upon the petition that Mr. Caldwell filed, the claim is just not... Yeah, we know he didn't amend it. Why was it important to amend because of Sweeney's vest? What was that point? What was he trying to say? Well, if basically he was trying to say that the vest that was presented at trial was not the vest that Sweeney wore that day because of a certain tag on the vest. Now, if he provided supportive evidence of that, that it was not that vest and showing that it was police policy that all vests at that time had that tag, he could have shown that Sweeney was not actually shot the day in question if he was able to properly shape that claim in that petition, which counsel just did not do. Officer Sweeney testified that he felt a twinge in his lower back, but he also testified that he was following the defendant. So how did he get shot in the back? Well, I mean, there is a chance that it could have been a deflection. There was kind of a differing testimony about whether or not the gun fired by who the jury felt was Caldwell could have struck the brick wall. There's kind of some inconclusive evidence about that. So it could have easily deflected in that manner. And so if that vest was actually not the one, it would have shown that he was not actually battered by Mr. Caldwell. Okay. And what about the other evidence that Officer Sweeney's testimony was, there were prior inconsistent statements and reports? What was inconsistent? So that's what we don't know. That's why it needs to be sent back to the second stage for counsel to basically develop that claim because he didn't essentially attach the report. And if counsel couldn't find that report, he needed to withdraw that claim, but there was clearly not any kind of shaping of the claim by counsel. So we don't know what Officer Sweeney may have said inconsistently prior, and that could have impacted the jury's determination of his credibility. Well, maybe the jury just believed Officer Sweeney and didn't believe the defendant. Well, right. But basically we don't know what that claim is because we don't know what those prior inconsistent statements are because... No, Officer Sweeney testified that he was essentially shot in the lower back. Right. And the defendant, his theory was, I wasn't even there. Well, but I still think that it was not fully developed. We don't know what those prior inconsistent statements could have been, so it needs to be sent back for counsel. Okay. How would you recommend that post-conviction counsel perfect a post-conviction petition based on the defense theory that he wasn't there? What else could the post-conviction counsel have done? I still think it was a multi-pronged theory at trial. I do think that he was still arguing that there was no intent to kill or intent to batter. So in effect, he was saying the trial counsel strategy was wrong, which isn't going to get very far. Well, but again, we don't know exactly what those prior inconsistent statements were. And that's why post-conviction counsel needed to develop that claim. And then we can make that determination if it was something that clearly shows that the accuracy of how Sweeney was... How would post-conviction have entered a police report that wasn't in evidence at the trial court level? I mean, we just don't know what he could... I mean, he... I'm not sure what exactly he could have done, but he could have reached out to Caldwell, reached out to Caldwell's friends and family who clearly lived in that building. The friends and family weren't there at the shooting. Nobody was there when the shooting was happening. No friends, no family, was a bunch of cops. No one testified at trial. What good would their affidavits have done? And in your brief, you say he had a gun. That's like the third sentence. He had a gun. There was no testimony at trial that there was no one else there that saw it. There could have easily been other witnesses that just did not feel comfortable. Any of that defense strategy. There's a lot of things you can speculate to, but we've already gone through this road once, as you know, in the 2012 decision. There's nothing about that that you just talked about. And here in your brief, there's nothing about any other witnesses being there. I mean, now you're speculating, totally speculating, right? Well, right. And that's why it needs to be sent back for counsel to either develop that claim or to withdraw it. And counsel was unreasonable for proceeding on these claims by merely standing on the petition. If it wasn't, you said he should have withdrawn it. I mean, the fact is it was denied. So, you know, that's the same effect, whether he withdrew it or was denied. But what you're basically saying that there isn't anything there. I mean, there wasn't anything he could do with it, Well, that's the thing is we don't know. And that's why it needs to be sent back for essentially client to provide Mr. Caldwell with reasonable assistance. We need to know that he, you know, is either developed the claims or he withdraws them. And so I think that's why we just don't, you know, we just don't know until it is sent back for him to fully develop those claims that were that were lacking in his. Mr. Allen, could you wrap it up, please? Sure. If there are no further. I have one question. Okay. And on the second issue on the sentencing. Yes. He got the maximum. Why should he not have received the maximum? Why should we send it back for recents? Well, the record shows Caldwell has immense rehabilitative potential. This was Caldwell's first violence offense, which occurred when he was already 223 years old. He also had a work history. He was furthering his education, had strong families, family support, and had also expressed remorse. The injury caused was minimal in nature as well. He was found guilty of assault with a deadly weapon against a police officer. We can't just have people shooting at police officers. Right. But and that is reflected in the crime he was convicted of, which had a injury cause was mere redness on officers Sweeney. And so with all of that, the sentence ignored the constitutional directives of restoring Mr. Caldwell to you. Okay, but this this judge went over the aggravating and mitigating factors. Yes, yes, the judge went over all that extensively. But I think that the the finding and the sentence shows that the circuit court abused its discretion in essentially finding that Caldwell did not have any rehabilitative potential when there was extensive evidence showing that he did. And that is how the circuit court abused its discretion and how Caldwell made a substantial showing that his direct appeal counsel was ineffective. If there are no further questions, I need your questions. Just Judge Cogman. No, no. No further questions. I will say the rest of my time for rebuttal. Thank you. Thank you, Mr. Fever. Thank you, Your Honor. May it please the court. With regard to issue one defendant has not made substantial showing of ineffective assistance of trial counsel or appellate counsel for that matter. I'd like to make three points with regard to issue one. First, this claim is merely hindsight and second guessing. Trial counsel had a very sound strategy of acquittal based on misidentification. Requesting a lesser included offense would have been completely inconsistent with that strategy and would have reduced the chances of an acquittal by increasing the chance of a compromise. And as Your Honors have pointed out, it is important to remember that the defendant did testify to an alibi, not to recklessness. My second point is that defendant was not even entitled to a lesser included instruction. Repeatedly shooting at a police officer who is in the process of apprehending you is more than just reckless conduct. And even defendant's custodial statement denied intentional battery but established knowing battery. His custodial statement did not support recklessness. My third point is that a lesser included instruction would not have changed the outcome of the trial here. Based off of the notes that the jury sent, it was clear that there was a split among the jurors on the issue of specific intent to kill, not knowing battery. So that split amongst the jurors is obvious because they say that they're deadlocked on one of the issues when they ask for a further explanation of specific intent to kill. And then they in fact find him not guilty of attempt murder and find him guilty of the aggravated battery with a firearm. So it's absurd to suggest that they would have compromised on something less than aggravated battery with a firearm. The issue was between whether this was just aggravated battery or if it was attempt murder. I'd like to very briefly respond to the comments about transferred intent. It's really not fair to say the trial counsel didn't understand the law. What you have here is one single time that the trial counsel misspoke, misused a single term once when responding to a claim that's completely different than the one that's before the court right now. In the colloquy where trial counsel uses the term transferred intent, he never talks about recklessness. He never talks about lesser included instructions. That conversation happens three pages later. What trial counsel was saying at the point when he misused that term was actually a valid point. And that valid point was that the state did not have to prove intentional battery. Proof of knowing battery was enough to convict the defendant. That's what the defendant was told. That's what trial counsel was explaining that he told the defendant. And that's absolutely correct under the law. So you're saying it was a slip of the tongue, basically, how he said those words in the context that what you just said makes sense. Right. He misspoke once. And that wasn't even when he was being asked by the trial court about lesser included instructions a couple of pages later. Right. So that's not the reason that he didn't seek a lesser included instruction. The reason he didn't seek a lesser included instruction was that just didn't make sense for his strategy. If there are no other questions on issue one, I'd like to briefly address the other two issues with regard to issue two. I'd like to start out by pointing out that I don't believe that this would be an issue, a question of sending it back for resentencing. This would be at most an issue of hearing from appellate counsel at a third stage hearing where appellate counsel can testify to what the circumstances and the considerations were. And then that judgment can be made about whether or not there is ineffective assistance of appellate counsel for that raising this issue. But the bottom line here is that the defendant did not make a substantial showing of ineffective assistance of appellate counsel because there's no evidence that the trial court abused its discretion at sentencing. The trial court explained its reasoning. It discussed all the factors in mitigation and raising that issue of sentencing on appeal would have simply been a request to 30, right? The most. So that means that this has to be, for this crime, this has to be the most heinous of this type of crime. And that he has no rehabilitation. He does not have a violent background, right? I mean, there are many cases where things have gotten a lot worse and they haven't gotten the maximum. So I'm just trying to figure out, we have a duty to review sentencing. Now, yeah, if the sentencing was somewhere else between six and 30, it might be different. But when you talk at the lowest level or the highest level, you're making a statement. And I'm trying to figure out based upon the record before us, how can the maximum be the appropriate result here? Well, keep in mind that this is a sentence that is within. I understand it. That doesn't make it, there have been many sentences, Supreme Court of Illinois has reversed sentences within the sentencing lines. So that doesn't. Right. But it has to be an abuse of discretion at that point. Maybe that's the question. Maybe it's like staying constitutional scrutiny when you have the maximum in a situation like this. He wasn't, thank God. I mean, it was, fortunately he wasn't hurt. He didn't receive any medical care from what I understand. He had two red marks. I think that that's serious, but it's not serious enough that he was bleeding or had any repercussions from that, but he was just, he was very fortunate. But, and in that part of what's going on here, I mean, he was not, the colleague was not found guilty of the attempted murder. That's all true, Your Honor. I think the question is the standard. And here, what we are looking at is we're looking at an appellate attorney and asking whether or not they were ineffective for deciding that this excessive sentence argument that opposing counsel is now presenting, whether or not they were ineffective for not raising that argument. That's right. That's the issue. And the issue that that appellate attorney was considering was whether or not he could, he or she could prove an abuse or show an abuse of discretion by the trial court in imposing a sentence that absolutely was the maximum, but was not outside of the sentencing range, which means that it's presumed to be a valid and appropriate sentence. It's not outside the sentencing range. It could be rebutted. The question is, should it have been rebutted? Was there evidence there as counsel went through a whole litany of things of why it shouldn't be at the maximum? It was not ineffective for appellate counsel to decide that that was not an issue that needed to be presented on direct appeal. And I would urge this court not to find otherwise. I would say again, that I do believe that a correct remedy would be to send this back for further post-conviction proceedings to determine whether or not ineffective assistance of appellate counsel occurred. If there are no other questions on issue two, I would like to have an opportunity to address issue three. I have three points on issue three. First, post-conviction counsel does not have any duty to shape frivolous claims. Second, there's no evidence here that the petition could have been post-conviction counsel did his job in this case. I'd like to point out that while posing counsel's brief says that the uses seven years in this case, this was a case where post-conviction counsel worked on it for three years. His first appearance in the case was in during those three years on the case. It's absolutely clear from the record that he was doing what is expected of a PC attorney. He spent that time consulting with the defendant, locating witnesses, interviewing witnesses, reviewing the record, determining that the entire record was not in their possession, and then seeking out the additional transcripts. All this is presented in the record by PC counsel informing the circuit court of their activity. It really shows that if there had been a valid claim here, the PC counsel would have raised it. This idea of Officer Sweeney's vest being switched with this is all really conspiracy theory land, and it's not something that really could have been turned into a meaningful meritorious claim. If there are no further questions for these reasons and for those in our brief, the people ask this court to affirm the circuit court's dismissal of defendant's petition. Thank you. Mr. Allen, rebuttal. Yeah, just briefly, I just want to hit on argument two and Mr. Caldwell's rehabilitative potential. If you look at the sentencing hearing, Mr. Caldwell had earned his GED prior to this and was also taking or had taken computer programming classes at DeVry, and that educational progress demonstrates rehabilitative potential. He also worked as a butcher. Work history shows rehabilitation. Caldwell's family supported him. They were coming to pretty much every court date. They actually, as shown by the post-conviction record, are still coming to court dates. Mr. Caldwell apologized to the court and said he wanted to be a productive citizen, and expressing remorse demonstrates rehabilitative potential, just like strong family ties do. If you look at some of the documents to the PC, he also tried to supplement it in some sort of motion showing that he is continuing to seek educational avenues during his custodial incarceration. Essentially, he made a substantial showing that direct appeal counsel was ineffective in failing to challenge that maximum sentence as excessive. Then as issue three, he failed to properly supplement the petition and failed to attach evidentiary support for Caldwell's contentions. If he could not do that, counsel should have withdrawn those claims. He could not properly shape and set out of standing on the PC. If there are no further questions, this court should reverse the dismissal of Caldwell's post-conviction petition and remand for an evidentiary hearing with new counsel because Mr. Caldwell's petition made a substantial showing that his trial and appellate counsel provided ineffective assistance where appellate counsel failed to challenge counsel's refusal to seek the reckless conduct instruction. You should also reverse and remand for a new sentencing hearing under argument two, and then if not on argument three, you should reverse the dismissal of Caldwell's petition and remand for further second stage proceedings. Thank you. Thank you both for your excellent briefs and excellent oral argument. We'll take this matter under consideration and this case and court are adjourned.